IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

IN RE:
JOSIANE G. SWARTZ
   Debtor

CASE NO.: 6:14-bk-01253-KSJ

Chapter 13

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY
### (Surrendered Property)

### _NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING_

*Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files a response within twenty-one (21) days from the date set forth on the proof of service attached to this paper plus an additional three days for service. If you object to the relief requested in this paper, you must file your response with the Clerk of the Court at U.S. Bankruptcy Court, Middle District of Florida, George C. Young Federal Courthouse, 400 W. Washington Street, Orlando, FL 32801, and serve a copy on the Movant's attorney, Suzanne V. Delaney, Storey Law Group, P.A., 3191 Maguire Blvd., Suite 257, Orlando, Florida 32801 within the time allowed.*

*If you file and serve a response within the time permitted, the Court may schedule and notify you of a hearing, or the Court may consider the response and may grant or deny the relief requested without a hearing. If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant relief requested.*

   COMES NOW, Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Normandy Mortgage Loan Trust, Series 2013-9 (hereinafter, "Movant"), by and through its undersigned attorney, and moves the Court pursuant to 11 U.S.C., Section 362 (d) and Bankruptcy Rule 4001, for relief from the automatic stay, and states:

1. JOSIANE G. SWARTZ ("Debtor") filed this Chapter 13 Voluntary Petition on February 4, 2014.

2. The property, which is the subject of this Motion for Relief from Automatic Stay, is as follows:

  **Lot 25, DEBARY PLANTATION, UNIT 4, according to the Map or Plat thereof, as recorded in Map Book 43, Pages 42, 43 and 44, of the Public Records of Volusia County, Florida.**

  **Property Address: 116 Balmoral Ct., DeBary, FL 32713** (the "Property").

3. On May 25, 2004, Debtor executed a Note (the "Note") payable to CitiFinancial Mortgage Company (FL), LLC in the amount of $257,658.85 together with interest thereon as set forth therein. A true and correct copy of the Note is attached hereto as **Exhibit A** and is incorporated by reference.

4.   To secure the payment of the Note, on May 25, 2004, Debtor and Arthur G. Swartz executed a Mortgage in favor of CitiFinancial Mortgage Company (FL), LLC. A true and correct copy of the Mortgage is attached hereto as Exhibit B and is incorporated by reference. The Note and Mortgage may be collectively referred to as the "Loan Documents."

5.   The Loan Documents were assigned to Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Normandy Mortgage Loan Trust, Series 2013-9, as evidenced by that certain Assignment of Mortgage dated August 6, 2013, and recorded on August 13, 2013 in Official Records Book 6894, Page 896 of the Public Records of Volusia County, Florida (the "Assignment"). A true and correct copy of the Assignment is attached hereto as Exhibit C and is incorporated by reference.

6.   In the Amended Chapter 13 Plan filed on April 24, 2014, did not provide for payments to Movant with respect to the Property. A true and correct copy of the Amended Chapter 13 Plan is attached hereto as Exhibit D and is incorporated by reference.

7.   On December 29, 2014, Debtor's Amended Chapter 13 Plan was confirmed. A true and correct copy of the Order Confirming Chapter 13 Plan is attached hereto as Exhibit E and is incorporated by reference.

8.   The Order Confirming Chapter 13 Plan provides that the Property has been surrendered by the Debtor, and allows Movant to seek *in rem* relief from the automatic stay.

9.   Movant requests that the Court grant it relief from the Automatic Stay in this case pursuant to 362(d)(1) of the Bankruptcy Code.

10.  Movant is receiving no payments from the Debtor to protect Movant against the erosion of its collateral position and Movant is not otherwise being adequately protected.

11.  If Movant is not permitted to enforce its security interest in the collateral or provided with adequate protection, it will suffer irreparable injury, loss and damage.

12.  Movant requests the court to allow future communications directly with the Debtor in order to offer and provide information in regard to a potential Forbearance Agreement, Loan Modification, Refinance Agreement or other Loan Workout/Loss Mitigation Agreement, as well as notices required by state law, and furthermore, to enter into such agreement with Debtor. Movant acknowledges that such communications shall be limited and it shall not enforce or threaten to enforce any personal liability against Debtor that is discharged in this bankruptcy. Movant further requests permission to reschedule the foreclosure sale pursuant to the Final Judgment.

13.  Once the stay is terminated, the Debtor will have minimal motivation to insure, preserve, or protect the collateral; therefore, Movant requests that the Court waive the 14-day stay period imposed by Fed. R. Bankr. P. 4001(a)(3).

14.  The post-petition payment address is Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Normandy Mortgage Loan Trust, Series 2013-9, c/o Selene Finance LP, 7077 Bonneval Road, Jacksonville, FL 32216.

WHEREFORE, Movant, Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Normandy Mortgage Loan Trust, Series 2013-9, prays that this Honorable Court will enter its order terminating, annulling, modifying, or conditioning the automatic stay under 11 U.S.C. § 362(d) to permit Movant to take any and all steps necessary to exercise any and all rights it may have in the

collateral described herein, to gain possession of said collateral, and to have such other and further relief as is just.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing with attachments has been served either by electronic or standard first class mail this ____ day of January, 2015 to Josiane G. Swartz, 116 Balmoral Court, DeBary, FL 32713; Laurie K. Weatherford, Trustee, PO Box 3450, Winter Park, FL 32790; and United States Trustee, George C. Young Federal Building, 400 West Washington Street, Suite 1100, Orlando, FL 32801.

Suzanne V. Delaney
Florida Bar No. 0957941
Storey Law Group, P.A.
3191 Maguire Blvd, Suite 257
Orlando, FL 32803
Telephone: 407.488.1225
Facsimile: 407.488.1177
sdelaney@storeylawgroup.com
*Attorney for Christiana Trust, A Division of Wilmington Savings Fund Society, FSB, as trustee for Normandy Mortgage Loan Trust, Series 2013-9*

# NOTE

May 25, 2004                          DEBERRY                          FL
[Date]                               [City]                           [State]

116 BALMORAL CT
DEBERRY, FL  32713
[Property Address]

## 1.  BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 257,658.85          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is  CitiFinancial Mortgage Company (FL), LLC

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.  INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of          6.4500%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.  PAYMENTS

(A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the   1st   day of each month beginning on          July 01, 2004 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  June 01, 2034          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  P O Box 9023, Des Moines, IA  50362-9023

or at a different place if required by the Note Holder.

(B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1620.11

## 4.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

FLORIDA FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          EB~4888219720 Form 3210 1/01
ITEM 6968L1 (0011) MFFL3120          *(Page 1 of 3 pages)*          GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131





EXHIBIT
A

5.  LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6.  BORROWER'S FAILURE TO PAY AS REQUIRED

(A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of          **Fifteen**          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be          **5.0000%** of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C)  Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D)  No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E)  Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.  GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in

this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**11. DOCUMENTARY TAX**

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

Borrower has executed and acknowledges receipt of pages 1 through 3 of this Note.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
JOSIANE G. SWARTZ                          -Borrower

_____ (Seal)
                                                            -Borrower

_____ (Seal)
                                                            -Borrower

_____ (Seal)
                                                            -Borrower

_____ (Seal)
                                                            -Borrower

_____ (Seal)
                                                            -Borrower

                                                    *[Sign Original Only]*

Florida
Prepayment / Arbitration
Addendum to Note

THIS PREPAYMENT/ARBITRATION ADDENDUM TO NOTE (the "Addendum") is made this 25th day of May , 2004 , and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned ("Borrower"), in favor of CitiFinancial Mortgage Company (FL), LLC ("Lender") and dated the same date as this Addendum (the "Note"). The Note is secured by a mortgage/deed of trust/security agreement (the "Security Instrument") in favor of Lender dated the same date as this Addendum.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

1.    Prepayment Penalty.

Notwithstanding anything in the Note to the contrary, the "Borrower's Right to Prepay" paragraph of the Note is modified to read, in full, as follows:

"I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

Within the first three (3) years from the date of this Note, if I prepay the balance of the Note in full, I agree to pay a prepayment penalty in an amount as follows:

Three percent (3%) of the unpaid Principal Balance of the Note if I prepaid prior to one year after the date of the Note;
Two percent (2%) of the unpaid Principal Balance of the Note if I prepaid from one year but prior to two years after the date of the Note;
One percent (1%) of the unpaid Principal Balance of the Note if I prepaid from two years but prior to three years after the date of the Note;

The Note Holder will use my Prepayments to reduce the amount of Principal I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment Amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes."

330363

2.   Arbitration.

Borrower and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated herein and made a part hereof by reference.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Prepayment/Arbitration Addendum to Note.


X _Josiane C. Swartz_ . (Seal)                                    _____ (Seal)
JOSIANE G. SWARTZ            - Borrower                                               - Borrower

_____ (Seal)                                  _____ (Seal)
                          - Borrower                                                 - Borrower

ITEM 2642812 (0302)                                                                  330363

5JU 1785879

06/08/2004 02:17 PM
Doc stamps 901.95
Intangible Tax 515.32
Instrument# 2004-140052
Book: 5336
Page: 136

PREPARED BY:
*L. Woods*

Name: CITIFINANCIAL MORTGAGE COMPANY

Address:    8333 RIDGEPOINT DR
            IRVING, TEXAS 75063

Return to:
CitiFinancial Mortgage Company
P O Box 140769
Irving, TX 75014

4L05311

Record & Return to:
Tilecorp of Florida
355 S. Ronald Reagan Blvd.
Longwood, Florida 32750

————[Space Above This Line For Recording Data]————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated May 25, 2004                                , together with all Riders to this document.

(B) "Borrower" is ARTHUR G. SWARTZ AND JOSIANE G. SWARTZ, HUSBAND AND WIFE

Borrower is the mortgagor under this Security Instrument.

(C) "Lender" is CitiFinancial Mortgage Company (FL), LLC

Lender is a Delaware Limited Liability Company                                organized and existing under the laws of Delaware                                . Lender's address is 8333 Ridgepoint Dr, Irving, Texas  75063

. Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated May 25, 2004                                . The Note states that Borrower owes Lender    Two Hundred Fifty Seven Thousand Six Hundred Fifty Eight and 85/100
Dollars (U.S. $  257,658.85                ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than June 01, 2034

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Other(s) [specify] |
| ☐ 1-4 Family Rider | ☐ Biweekly Payment Rider | |

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1616L1 (0011) MFFL3112                                *(Page 1 of 11 pages)*

EB-4808219720      Form 3010 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 610-791-1131




EXHIBIT
B

Book: 5336
Page: 137

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, the following described property located in the
of                                                                   :

[Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]

Lot 25, DEBARY PLANTATION, UNIT 4, according to the Map or Plat thereof, as recorded in Map Book 43, Pages 42, 43 and 44, of the Public Records of Volusia County, Florida.

which currently has the address of

116 BALMORAL CT
[Street]

DEBERRY              , Florida        32713              ("Property Address"):
[City]                                [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          EB-4880210720   Form 3010 1/01
                                                                                          GREATLAND ■
ITEM 1616L2 (0011)  MFFL3112                    (Page 2 of 11 pages)          To Order Call: 1-800-530-9393□Fax: 616-791-1131

Book: 5336
Page: 138

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1.    Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.    Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for

Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5.    Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may

Book: 5336
Page: 140

require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may

Book: 5336
Page: 141

disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. Borrower's Loan Application. Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT

ITEM 1916L9 (0011) MFFL3112                    (Page 6 of 11 pages)

EB-4886219720    Form 3010 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131



Book: 5336
Page: 142

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has—if any—with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this

Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Book: 5336
Page: 144

16.   Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.   Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18.   Transfer of the Property or a Beneficial Interest In Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.   Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender; (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.   Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the

Book: 5336
Page: 145

other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22.  Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23.  Release. Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24.  Attorneys' Fees. As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

25.  Jury Trial Waiver. The Borrower hereby waives any right to a trial by jury in any action, proceeding, claim, or counterclaim, whether in contract or tort, at law or in equity, arising out of or in any way related to this Security Instrument or the Note.

EB-4008219720   Form 3010 1/01
GREATLAND ■
To Order Call: 1-800-530-9393□Fax: 616-791-1131

Book: 5336
Page: 146
Diane K. Matousek
Volusia County, Clerk of Court

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 11 of this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Josiane G. Swartz_ (Seal)
JOSIANE G. SWARTZ          -Borrower
116 BALMORAL CT

_Arthur G. Swartz_ (Seal)
ARTHUR G. SWARTZ          -Borrower

_____ (Seal)
              -Borrower

_____ (Seal)
              -Borrower

_____ (Seal)
              -Borrower

_____ (Seal)
              -Borrower

Signed, sealed and delivered in the presence of:

_____          _____

State of Florida
County of Osceola

The foregoing Instrument was acknowledged before me this 25th day of May, 2004 by JOSIANE G. SWARTZ and ARTHUR G. SWARTZ

who is personally known to me or who has produced DR. LICENSES

as identification.

Larissa A Hill
My Commission DD102907
Expires February 10, 2007

_Larissa A Hill_
Notary Public

FLORIDA—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
ITEM 1818L11 (0011)    MFFL3112

EB~4886219720    Form 3010 1/01
GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131

*(Page 11 of 11 pages)*

JFS

08/13/2013 11:32 AM
Instrument# 2013-155866 # 1
Book: 6894
Page: 896
Diane M. Matousek
Volusia County, Clerk of Court

PREPARED BY & RETURN TO:                                                        Assigned Code 145
M. B. Wileman
2860 Exchange Blvd. # 100
Southlake, TX 76092            **Assignment of Mortgage**            Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, CITIFINANCIAL MORTGAGE COMPANY (FL), LLC 4050 Regent Blvd, Mail Stop N2A-222, Irving, TX 75063 (Assignor) by these presents does assign and set over, without recourse, to CHRISTIANA TRUST, A DIVISION OF WILMINGTON SAVINGS FUND SOCIETY, FSB, AS TRUSTEE OF NORMANDY MORTGAGE LOAN TRUST, SERIES 2013-9  1610 E. St. Andrew Place, Suite B, Santa Ana, CA 92705 (Assignee) the described mortgage with all interest, all liens, any rights due or to become due thereon, executed by ARTHUR G. SWARTZ AND JOSIANE G SWARTZ, HUSBAND AND WIFE to CITIFINANCIAL MORTGAGE COMPANY (FL), LLC.  Said mortgage Dated: 5/25/2004 is recorded in the State of FL, County of Volusia on 6/8/2004, Book 5336 Page 136 Instrument # 2004-140052 AMOUNT: $ 257,658.85   Property Address: 116 BALMORAL CT, DEBARY, FL 32713

IN WITNESS WHEREOF, the undersigned corporation/trust has caused this instrument to be executed as a sealed instrument by its proper officer. Executed on: August 6, 2013
CITIFINANCIAL MORTGAGE COMPANY (FL), LLC

By: 
            Melanie A. Arndt, Vice President                        SWARTZ*   LHB   13004234

State of Texas  County of Tarrant
            On 08/06/2013, before me, the undersigned, Melanie A. Arndt, personally known to me, acknowledged that he/she is Vice President of/ for CITIFINANCIAL MORTGAGE COMPANY (FL), LLC  and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of CITIFINANCIAL MORTGAGE COMPANY (FL), LLC

JULIE BACON
MY COMMISSION EXPIRES
November 30, 2014

                        Notary public, Julie Bacon
                        My commission expires: November 30, 2014

FL  Volusia                        CITICAP/WL19-2013/AS


EXHIBIT
C

**FILED**

APR 2 4 2014

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

JOSIANE G. SWARTZ

Debtor(s).

CASE NO.:  14-01253-6A3

_____/

_____ Chapter 13 Plan      X    _____ Amended Chapter 13 Plan

COMES NOW, the Debtor(s) and files this Chapter 13 Plan. The projected disposable income of the Debtor(s) is submitted to the supervision and control of the Chapter 13 Standing Trustee, and the Debtor(s) shall pay the following sums to the Chapter 13 Standing Trustee:

PLAN PAYMENTS

Payment Number by months              Amount of Monthly Plan payment

1- 60    50/ Month  for 60 months      $3000

The Debtor(s)(s) shall pay by money order, cashier's check or wage deduction, to Laurie K. Weatherford, Chapter 13 Standing Trustee, P.O. Box 1103, Memphis, Tennessee 38101-1103. The Debtor(s) name and case number must be indicated clearly thereon and received by the due dates for payments established by court order.

PAYMENT OF CLAIMS THROUGH THE PLAN

Attorney Fees

| Attorney Name | Claim Amount | Payment Amount | Payment Month Numbers |
|---|---|---|---|
| N/A | | | |

Priority Claims
The fees and expenses of the Trustee shall be paid over the life of the Plan at the rate allowed as governed by the guidelines of the United States Trustee and

| Name of Creditor | Claim Amount | Payment Amount | Payment Month Numbers |
|---|---|---|---|


EXHIBIT
D

**Secured Claims**

| Secured Creditor | Claim Amount | Payment Amount | Payment Month Numbers |
|---|---|---|---|
| WRALD OMINI | 30000 | in full outside of banruptcy by spouse of debtor | |

**Secured Arrearage**

| Name of Creditor | Claim Amount | Payment Amount | Payment Month Numbers |
|---|---|---|---|
| | | | |

**Secured Gap Payments**

| Name of Creditor | Claim Amount | Payment Amount | Payment Month Numbers |
|---|---|---|---|
| | | | |

<u>Property to Be Surrendered:</u>

Creditor Name:                                    Property Address:

**Valuation of Security:**

| Name of Creditor | Claim Amount | Payment Amount | Payment Month Numbers |
|---|---|---|---|
| | | | |

(motion to value must be filed consistent with plan treatment)

**Executory Contracts:**

The following Executory Contracts are assumed

| Name of Creditor: | Description of Collateral: | Month Numbers: |
|---|---|---|
| | | |

The following Executory Contracts are rejected:
Name of Creditor:                                  Description of Collateral:

Unsecured Creditors: whose claims are allowed shall receive a pro rate share of the balance of the funds remaining after payments to Priority and Secured Creditors are made. Approximate percentage: _____%

Property of the Estate revests in the Debtor(s) upon confirmation of the plan, OR upon completion of all plan payments and the discharge of Debtor(s).

## CERTIFICATE OF SERVICE

I/We hereby certify that a true and correct copy of the Amended Chapter 13 Plan of Debtor(s) was furnished by United States mail, postage prepaid, to All Creditors and Parties in Interest as listed on the Court's Matrix as attached, this _____ day of __April 22 2014__,

_____
Debtor Signature

_____
Debtor Signature

_____
Attorney for Debtor
(name, address)

### UNITED STATES BANKRUPTCY COURT
### Middle District of Florida
### Orlando Division

IN RE:

Josiane G Swartz

Debtor

Case No:    6:14-bk-01253-KSJ

Chapter 13

### Order Confirming Chapter 13 Plan

This case came on for a Confirmation Hearing on November 18, 2014. It having been determined that the debtor's Plan as modified at the hearing, docket number 29, complies with section 1325 and other applicable sections of the Bankruptcy Code, it is herewith Ordered as follows:

1. The debtor's Chapter 13 Plan is confirmed.

2. Payments by the debtor of (see exhibit "A") per month by money order or cashier check or wage deduction for 60 consecutive months commencing on March 6, 2014 are to be made to Laurie K. Weatherford - Trustee, P.O. Box 1103, Memphis, TN 38101-1103.

3. According to the confirmed Plan, or any modified plan thereafter, the last regular monthly mortgage payment to be paid through the Chapter 13 Trustee's office is 02/06/2019. Therefore, it is important that the debtor resume their regular monthly mortgage payments directly to the mortgage creditor thereafter.

4. The debtor is prohibited from incurring any post-confirmation debt during the term of this Plan without prior approval of the Court or the Trustee.

5. Claims are allowed and security surrendered to creditors as set forth in Exhibit "A" attached hereto, and by reference made a part hereof.

6. If a debtor surrenders property, creditors holding secured interests in the surrendered property may seek in rem relief from the automatic stay without payment of the related filing fee provided the motion is served by negative notice and is titled: Motion for Relief from Stay (Surrendered Property). Creditors may file an unsecured claim for any deficiency due within 91 days of the entry of this Order. Surrender is deemed effective immediately upon entry of this Order.

7. Distribution by the trustee shall commence and continue on a monthly basis following this confirmation in the following order:


EXHIBIT
E

Page 2 of Order Confirming Plan of Case No. 6:14-bk-01253-KSJ

  a. Trustee percentage fee as allowed by the U.S. Trustee.

  b. Attorney fees and expenses are allowed in the amount of $0.00 to the debtor's attorney.

  c. Creditors' claims in accordance with Exhibit "A".

8. Provisions for treatment of adjustable rate mortgage payments and escrow accounts are as follows:

  a. The Mortgage Holder shall forward any notice of change of mortgage payment or escrow amount to the debtor, debtor's attorney, and the trustee as soon as practicable and before any payment change is requested to occur.

  b. The Mortgage Holder shall assess no post-petition costs or expenses against the debtor's account during the pendency of this case until first providing the debtor, debtor's attorney, and the trustee with a notice of requested charges and opportunity to object.

  c. Upon receipt of the notice of payment changes or charges requested, the trustee shall take the following action:

    (1) If the new payment is *less* than the current payment, the trustee shall reduce the payment to the creditor in accordance with the notice and apply the difference to increase the distribution to unsecured creditors.

    (2) If the new payment is *greater* than the current payment, the trustee shall compute the additional sum the debtor must pay and advise the debtor and debtor's attorney of the new monthly payment amount. The payment to the creditor will be adjusted accordingly.

  d. These provisions are in effect a modification to a confirmed plan requested by the trustee pursuant to 11 U.S.C. Section 1329. Notice and hearing are waived inasmuch as no creditor will be adversely affected by such change.

  e. The automatic stay is modified, to the extent necessary, to allow the debtor and Mortgage Holder to negotiate loan modification terms during the pendency of this case. The parties shall timely submit any agreed loan modifications to the Court for approval.

9. Provisions for both pre-petition and post-petition arrears, if any, on allowed secured claims (including mortgage claims) are included in the Plan and this Order. Upon debtor making all payments required under the Plan and the entry of a Discharge Order, the delinquencies on any secured claims (including mortgage claims) paid through the Plan are deemed cured and reinstated through the plan completion date. All post-petition late fees and charges of any kind incurred incident to the Plan but not properly noticed and addressed via paragraph 8 above are discharged. Further, upon debtor making all payments required under the Plan to satisfy a security interest in a motor vehicle, mobile home or other similar property of the estate, upon discharge, creditor must timely provide a satisfaction and release of lien pursuant to state law.

Page 3 of Order Confirming Plan of Case No. 6:14-bk-01253-KSJ

10. Provisions for creditors' liens that are being avoided are as follows:

    a. Claim of a creditor whose liens are being avoided by debtor is treated in debtor's Plan as unsecured claims, and a statement of this treatment is included in the Plan.

    b. If the case is dismissed, those payments received by the creditor apply to the debt, but the lien is not avoided by this Order.

    c. The lien of the creditor is avoided, without further order, upon the earlier of (i) the payment of underlying debt, or (ii) the entry of a discharge under section 1328.

11. If any claim (secured/priority/unsecured) is filed after entry of this Order, the debtor or their attorney must timely file the appropriate motion to modify confirmed plan, objection(s) to claims and/or motion(s) to value claims.

12. If bar date to file proofs of claim has not yet expired:

    a. The debtor shall have thirty-five (35) days following the expiration of any bar date to object to any claim filed after entry of this Order.

    b. The debtor shall have thirty-five (35) days following the filing of an untimely claim to file an objection.

    c. Failure to timely object to a claim shall result in the allowance of the claim and the trustee shall include payments to these creditors in addition to those creditors currently listed on attached Exhibit "A".

    d. The trustee shall review the Claims Register after all bar dates have passed and file a motion to dismiss if the debtor fails to timely take appropriate action to address all filed claims.

13. The trustee shall hold all funds payable to general unsecured creditors for at least thirty (30) days after the bar date for filing claims has passed.

14. The debtor is responsible for paying all post-petition ongoing homeowners assessments, homeowners' dues, and/or property taxes; the automatic stay shall not apply to these debts.

15. The debtor is responsible for paying any domestic support obligation that first becomes payable after the date of filing of the petition.

16. Variations in distributions between the debtor's Plan and this Order shall be resolved in favor of this Order.

17. The debtor shall provide to the Chapter 13 Trustee all tax returns on an annual basis, to be

Page 4 of Order Confirming Plan of Case No. 6:14-bk-01253-KSJ

received by the Chapter 13 Trustee no later than April 30th of each year.

18. All future refunds from the Internal Revenue Service shall be turned over to the Chapter 13 Trustee for distribution to the general unsecured creditors who have filed timely unsecured claims.

19. All objections to confirmation of the Plan were resolved at the Confirmation Hearing or are resolved by this Order.

20. No later than 180 days prior to the debtor's last Plan payment, the debtor shall file a certification(s) that (i) lists all domestic support obligations and whether such obligations are current, (ii) certifies that Section 522 (q) (1) is not applicable and no proceeding is pending in which the debtor could be found guilty of an offense listed in 522 (q) (1).

21. The debtor shall complete the required debtor financial education course and file the related certificate with the Court no later than 180 days following the entry of this Order.

22. The provisions of paragraphs 20 and 21 only apply to those cases filed on or after October 17, 2005.

23. Any discharge entered in this case shall not discharge the debtor's liability on a federally guaranteed student loan debt unless the Court specifically finds that repayment of the debt would cause an undue hardship to the debtor or the debtor's dependents pursuant to 11 U.S.C. § 523(a)(8).

24. To the extent this Confirmation Order contains any modified term or condition not timely noticed, parties may seek the reconsideration of this Order within 14 days of its entry by separate motion.

Page 5 of Order Confirming Plan of Case No. 6:14-bk-01253-KSJ


DONE and ORDERED in Orlando, Florida, this 29th day of December, 2014

_____

Karen S. Jennemann
Chief United States Bankruptcy Judge


Copies furnished to: All Creditors and Interested Parties.

Trustee Laurie K Weatherford is directed to serve a copy of this order on interested parties and file a proof of service within 3 days of entry of the order.

Page 6 of Order Confirming Plan of Case No. 6:14-bk-01253-KSJ

Exhibit "A"

| Claim Nbr. | | Claim Type | Claim Amount | Claim Allowed | Notes | Monthly Payments | |
|---|---|---|---|---|---|---|---|
| AT | Pro Se | Attorney Fee | $0.00 | $0.00 | | | |
| 001 | Radiology Associates Of Tampa, Pa | General Unsecured | $105.56 | $105.56 | | 1-60/ | Pro Rata |
| 002 | World Omni Financial Corp. | Secured By Vehicle | $16,832.77 | $0.00 | ( 1) | | |
| 003 | World Omni Financial Corp. | Secured By Vehicle | $14,338.39 | $0.00 | ( 2) | | |
| 004 | Selene Finance | Ongoing Mortgage | $345,107.78 | $0.00 | ( 3) | | |
| 502 | World Omni Financial Corp. | General Unsecured | $1.00 | $1.00 | | 1-60/ | Pro Rata |
| 503 | World Omni Financial Corp. | General Unsecured | $1.00 | $1.00 | | 1-60/ | Pro Rata |

Note ( 1)   COLLATERAL TO BE SURRENDERED

Note ( 2)   COLLATERAL TO BE SURRENDERED

Note ( 3)   CLAIM TRANSFERRED TO SELENE FINANCE.
CLAIM REPRESENTS AMENDED CLAIM NO. 4-2
COLLATERAL TO BE SURRENDERED

### Debtor Payments to the Trustee

| Months | Amount |
|---|---|
| 1-60 | $50.00 |

NOTICE TO ALL CREDITORS LISTED ABOVE:  In an effort to disburse all funds held by the trustee on a monthly basis, it is possible that you may on occasion receive partial payment. However, the Claim Allowed by this Court will be paid in full by the end of the debtor's Plan. All undesignated funds will be distributed to unsecured creditors with timely filed proofs of claim.

THE TRUSTEE SHALL PROVIDE TO THE COURT an amended confirmation order after all unsecured claim issues are resolved, if necessary. There will be no distribution to unsecured creditors listed on Exhibit A, attached hereto, for 90 days following the date of this Order.

IF MORTGAGE MEDIATION HAS BEEN ORDERED, the debtor and the creditor are directed to comply with the terms of the mortgage mediation modification order. The Trustee is authorized to disburse to the mediator the mediation fee upon the mediator filing a notice of completed mediation..